IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Lee A. Donaldson,<br>John Capuano,<br><br>    Plaintiffs,<br><br>    vs.<br><br>Informatica Corporation and<br>Paul J. Hoffman,<br><br>    Defendants. | Civil Action No. 08-605 |

AMBROSE, Chief District Judge

# OPINION
# and
# ORDER OF COURT

This is a diversity case in which Plaintiffs have brought state law claims against Defendant Informatica Corporation ("Informatica") alleging: breach of contract, detrimental reliance, quantum meruit, violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.1, *et seq.*, and defamation *per se* in violation of 42 Pa. Stat. § 8343(a). In Count VI of the Amended Complaint, Plaintiff Donaldson also alleges defamation *per se* against Defendant Paul J. Hoffman ("Hoffman"). Plaintiffs' claims arise from Informatica's alleged failure to pay them appropriate commissions and alleged defamatory statements related thereto. Pending before the Court is a Motion to Dismiss Counts V and X of Plaintiffs' Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Informatica. (Docket No. 37). Also pending is a Motion to Dismiss Count VI of Plaintiffs' Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and/or for failure to state a claim pursuant to Rule 12(b)(6) filed by Hoffman. (Docket No. 39). Subsequent to the parties' filings

1

regarding the motions to dismiss, Plaintiffs agreed to withdraw Count X of the Amended Complaint (Plaintiff Capuano's WPCL claim against Informatica). (Docket Nos. 56, 58). Accordingly, Informatica's motion to dismiss Count X is denied as moot. After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, Hoffman's Motion to Dismiss is granted and the remainder of Informatica's Motion to Dismiss is denied.

## I. BACKGROUND

### A. Factual Background[1]

Informatica is a company headquartered in Redwood City, California that produces a sophisticated software platform that integrates data from a variety of different software platforms so that all users can access the entire body of data from the various software platforms. Plaintiff Lee Donaldson ("Donaldson") is currently employed by Informatica as a Major Account Manager. Plaintiff John Capuano ("Capuano") formerly was employed as a Regional Manager at Informatica and was Donaldson's direct supervisor at the time of the alleged conduct that gave rise to Plaintiffs' Amended Complaint. Defendant Hoffman is Informatica's Executive Vice President of Worldwide Field Operations, with a business address in Redwood City, California.

In the course of his employment, Donaldson was responsible for marketing Informatica's products in the Western half of the United States, including to Dell, Inc. ("Dell"), in the state of Texas. During the fourth quarter of 2006, however, Informatica informed Donaldson that it was moving the Dell account outside of Donaldson's sales territory but that Donaldson would continue to be responsible and paid commissions for servicing the Dell account through 2007 due to his strong bond and relationship with Dell officials. Donaldson completed one sale to Dell in June 2007 worth over one million dollars, and commenced the orchestration of a second sale to Dell worth over two million dollars. The second Dell sale got underway in the third quarter of 2007. The

---

[1] Unless otherwise noted, the facts in this section are taken from Plaintiffs' Amended Complaint.

second sale closed before the end of the first quarter of 2008. Although the Dell account was transferred to a new salesperson in the first quarter of 2008, that salesperson did not perform any substantive work relevant to the closing of the second Dell sale according to Donaldson. Capuano, as Plaintiff's direct supervisor, also was intimately involved with the entire Dell sale.

Donaldson contends that he was entitled to a full (100%) commission for the second Dell sale pursuant to the terms of Informatica's 2008 Worldwide Incentive Compensation Terms and Conditions ("WICTC"). On January 16, 2008, Hoffman, on behalf of Informatica, informed Donaldson for the first time in writing that he would not be receiving his full commission. According to Plaintiffs, Hoffman and others at Informatica decided that Donaldson would instead receive a descending percentage of his commission from fifty percent to twenty-five percent, depending on when the second Dell sale closed.

In an attempt to enforce his alleged WICTC rights, Donaldson requested that Informatica honor its obligation to pay him one hundred percent of his commission in connection with the second Dell sale. In the context of Donaldson's attempts to enforce his WICTC rights, Hoffman sent Informatica's Chairman and Chief Executive Officer Sohaib Abbasi ("Abbasi") and others an e-mail dated January 16, 2008, in which he allegedly impugned Donaldson's integrity and honesty by referencing such characteristics in the context of falsely stating that Donaldson did not tell Abbasi the "full true story" about himself in conjunction with Donaldson's petition to Abbasi for full compensation relative to the second Dell sale. The e-mail provided as follows:

> Sohaib,
>
> What Lee has conveniently forgotten to tell you is that he had an extra full-year to get credit on Dell and transition it over to its real territory (normal transitions happen within 90-days at a 75-50-25% rate over those three months). Dell is in Austin. Lee lives in Pittsburgh, PA. It makes no sense for him to cover Dell when we have many reps close by in Texas. It was agreed at the beginning of 2007 that Lee would be able to have a hold on Dell through 2007. When he closed the deal in June, it had an option for an ELA through 12/15. It didn't happen, as you know. Technically, Lee and John Capuano should not be getting <u>any</u> credit for Dell at all in 2007. However, Jeff Marion and Monica Froebe acted as team players and agreed with Brad to provide some

additional transition time[.] Lee was then told that if Dell closes by February he will get 50% and if it closes in March, he will get 25%. In my opinion this is a gift to him.

If he wants to talk about integrity, I would encourage him to be honest enough to tell you the full true story. I notice he didn't mention the names of the other big deals he did – probably because one was Abbott Labs – which is the ugly one they did without appropriate approvals. The other interesting question is why he feels YOU are the only one in a position to correct this – when he and I talked at the kickoff and he never mentioned it to me – probably because he knows that I know the <u>facts</u>!

This e-mail certainly will not help his reputation in the company.

Paul

<u>See</u> Hoffman Decl. (Docket No. 39, Ex. 1), Ex. A. Donaldson contends that Hoffman, in this e-mail, intended to defame Donaldson and seriously injure his business reputation by impugning his integrity, honesty, and competency.

## B. Procedural History

On or about September 9, 2008, Plaintiffs filed a First Amended Complaint against Defendants. (Docket No. 35). Informatica filed its Motion to Dismiss Counts V and X of the Amended Complaint and supporting brief on September 26, 2008. (Docket Nos. 37-38). On that same date, Hoffman filed his Motion to Dismiss Count VI of the Amended Complaint and supporting brief. (Docket Nos. 39-40). Also on September 26, Informatica filed an Answer to the remaining counts against it in the Amended Complaint. (Docket No. 41). On October 17, 2008, Plaintiffs filed a brief in opposition to Defendants' motions to dismiss. (Docket No. 42). On October 31, 2008, Defendants filed a Reply Brief (Docket No. 47), and, on November 11, 2008, Plaintiffs filed a Sur-Reply Brief in opposition (Docket No. 52). On December 16, 2008, the parties filed a Stipulation of Dismissal with prejudice as to Count X of the Amended Complaint, which I granted on December 17, 2008. (Docket Nos. 56, 58). The remaining issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. Informatica's 12(b)(6) Motion to Dismiss Count V (Defamation *per se*)

#### 1. Standard of Review Under Fed. R. Civ. P. 12(b)(6)

In ruling on a 12(b)(6) motion for failure to state a claim, I must look to whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007); see also Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008) (analyzing Twombly). In so doing, I must accept all factual allegations, and all reasonable inferences therefrom, as true and view them in the light most favorable to the plaintiff. Phillips, 515 F.3d at 231. Although a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65; Phillips, 515 F.3d at 231. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted). In short:

> "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965) (alteration in original).

When ruling upon a 12(b)(6) motion, I generally may consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and items appearing in the record of the case. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384

n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1195 (3d Cir. 1993). I also may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Id. at 1196. Other matters outside the pleadings should not be considered.

With this standard in mind, I turn now to the issues of this case.

### 2. Donaldson's Defamation Claim Against Informatica (Count V)

Informatica raises three arguments in support of its motion to dismiss Donaldson's defamation *per se* claim against it: (1) Hoffman's e-mail is not defamatory; (2) the e-mail is conditionally privileged and that privilege was not abused; and (3) Informatica cannot be liable for any alleged defamation because Hoffman was acting outside the scope of his duties when he sent the e-mail. Informatica's Br. at 4-7. For the reasons set forth below, Informatica's arguments do not support dismissal of the defamation claim against it at this stage of the proceedings.

Under Pennsylvania defamation law, a plaintiff must show, inter alia, "a communication capable of having defamatory meaning." Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001); see also 42 Pa. Cons. Stat. Ann. § 8343(a)(1). A "statement is defamatory ' if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from associating or dealing with him.'" Pacitti v. Durr, Civ. A. No. 05-317, 2008 WL 793875, at *15 (W.D. Pa. Mar. 24, 2008) (quoting U.S. Healthcare v. Blue Cross of Greater Phila., 898 F.2d 914, 92 (3d Cir. 1990)), aff'd, No. 08-2105, 2009 WL 325760 (3d Cir. Feb. 11, 2009); see also Green v. Mizner, 692 A.2d 169, 172 (Pa. Super. Ct. 1997) ("A publication is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession."). "Statements which are merely annoying or embarrassing or no more than rhetorical hyperbole or a vigorous epithet are not defamatory." Kryeski v. Schott Glass Techs., Inc., 626 A.2d 595, 601 (Pa. Super. Ct. 1993) (internal quotations omitted). "The trial court

must determine as a matter of law whether the communication is capable of having defamatory meaning; if not, the claim should be dismissed." Remick, 238 F.3d at 261. In making this determination, the court "must view the statement 'in context' with an eye toward 'the effect [the statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'" Id. (quoting Baker v. Lafayette College, 532 A.2d 399, 402 (Pa. 1987)); see also Green, 692 A.2d at 172 (The court "must consider the content of the [publication], the audience to which it was presented, and the effect it may have had thereon.").

Informatica's first argument is that Hoffman's e-mail is not capable of defamatory meaning because the e-mail at issue reflects no more than Hoffman's opinion of Donaldson and, therefore, is not actionable as a defamatory statement. I disagree. Informatica is correct that "statements of opinion, without more, are not actionable." Green, 692 A.2d at 174. A statement in the form of an opinion can be defamatory, however, if it "may reasonably be understood to imply the existence of *undisclosed defamatory facts* justifying the opinion." Remick, 238 F.3d at 261; see also Green, 692 A.2d at 174; Restatement (Second) Torts § 566. "Whether a particular statement is opinion or fact is a question of law for the trial court." Green, 692 A.2d at 174.

Here, after careful review of the e-mail at issue and the submissions of the parties regarding the same, I cannot conclude as a matter of law that the e-mail is incapable of defamatory meaning. As an initial matter, the e-mail, particularly from the second paragraph on, directly attacks Donaldson's integrity and reputation in his business or profession. Moreover, even assuming for purposes of this motion that the statements at issue are Hoffman's opinions, there is some force to Donaldson's argument that the statements imply the existence of undisclosed defamatory facts justifying the opinions. For example, in sentence one of the second paragraph, Hoffman states, "If he wants to talk about integrity, I would encourage him to be honest enough to tell you *the full true story*." See Hoffman Decl., Ex. A (emphasis added). Similarly, in the last sentence of

7

paragraph two, Hoffman indicates that Donaldson probably went to Abassi regarding the commission issue rather than Hoffman because "he [Donaldson] knows that I [Hoffman] know the facts!" Id. (emphasis in original). Furthermore, as set forth above, my analysis in this regard depends on the context, and not enough is known about the context at this juncture for me to conclude as a matter of law that the e-mail is not capable of defamatory meaning.[2]

Informatica's second argument is that even if Hoffman's e-mail is capable of defamatory meaning, it is conditionally privileged and, therefore, Informatica cannot be liable for defamation. This argument is premature. A party may defend a defamation action by showing that a statement was made pursuant to a conditional privilege. See Pacitti, 2008 WL 793875, at *16. A statement is conditionally privileged "if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know." Id. (quoting Daywalt v. Montgomery Hosp., 573 A.2d 1116, 1118 (Pa. Super. Ct. 1990)); see also Restatement (Second) Torts § 596. A defendant, however, abuses and therefore waives the privilege when "the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given or to a person not reasonably believed to be necessary to the accomplishment of the purpose of the privilege." Green, 692 A.2d at 175; see Pacitti, 2008 WL 793875, at *16. It is the defendant's burden to prove the privileged character of the occasion on which a defamatory communication was published, and it is the plaintiff's burden to show abuse of a conditionally privileged occasion. See 42 Pa. Cons. Stat. Ann. § 8343.

As an initial matter, the Amended Complaint in this case specifically alleges that Hoffman acted absent privilege or justification. See Am. Compl. ¶ 46. Moreover, although the Amended

---

[2] In its Reply Brief, Informatica disagrees that Hoffman's e-mail is based on undisclosed defamatory facts. Rather, Informatica contends that Hoffman explained in paragraph one of the e-mail the factual basis for his opinion as to why Donaldson was not entitled to a full commission. Reply Br. (Docket No. 47), at 1-2. Informatica, however, fails to address the more problematic paragraph two of the e-mail which is the paragraph questioning Donaldson's integrity and which, viewed in the light most favorable to Donaldson, appears to imply the existence of facts other than those mentioned in paragraph one, including implications regarding Donaldson's competency and/or honesty as to other deals in the past.

Complaint does not specifically state that Informatica abused any conditional privilege, construing it in the light most favorable to Donaldson and accepting as true its allegations and the inferences drawn therefrom, the pleading supports such a conclusion. See, e.g., id. ¶¶ 46-49. Disputed privilege issues such as these are more appropriately left for resolution at a later stage of the proceedings upon a more fully developed record. See, e.g., Green, 692 A.2d at 175.

Finally, Informatica argues that, even if Hoffman's e-mail was defamatory, Donaldson cannot state a defamation claim against Informatica because the Amended Complaint explicitly alleges that Hoffman acted outside the scope of his employment when he defamed Donaldson. Specifically, Informatica points to paragraph 83 of the Amended Complaint, which states that "Defendant Hoffman was acting outside and well-beyond the scope of his duties and/or responsibilities when he willfully, intentionally, and maliciously defamed Donaldson." See Am. Compl. ¶ 83. Although neither side addresses this argument further in the opposition briefs or replies, I decline to dismiss the defamation claim against Informatica on these grounds at this stage of the proceedings.

Even if, under Pennsylvania law, an employer is not liable for the intentional torts of an employee acting outside the scope of his employment, see, e.g., Aliota v. Graham, 984 F.2d 1350, 1358 (3d Cir. 1993), the statement in the Amended Complaint that Hoffman was not acting within the scope of his duties at the time of the alleged defamation appears only in Count VI of the pleading – Donaldson's defamation claim against Hoffman as an individual. Am. Compl. ¶ 83. Count V, the defamation claim against Informatica (which comes before Count VI and, thus does not incorporate paragraph 83), does not contain a similar statement. To the contrary, Count V alleges that Informatica acted through its employee, Hoffman. Am. Compl. ¶ 78. The general background section of the Amended Complaint likewise does not allege that Hoffman was acting outside the scope of his employment. Construing the Amended Complaint in the light most favorable to Donaldson, I must conclude, based on the placement of the statement at issue, that

Donaldson is simply pleading in the alternative (*e.g.*, if the evidence should show that Informatica is not liable because Hoffman acted outside the scope of his duties, Hoffman nevertheless is liable individually). Because the Federal Rules clearly permit pleading in the alternative at this early stage, Informatica's motion to dismiss Count V on this ground is denied. See Fed. R. Civ. P. 8(d); see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

For all of these reasons, Informatica's motion to dismiss the defamation count against it is denied without prejudice to Informatica's ability to reassert the above arguments, if appropriate, at the summary judgment stage upon a more fully developed record.

### B. Hoffman's 12(b)(2) Motion to Dismiss Count VI (Defamation *per se*)[3]

#### 1. Standard of Review Under Fed. R. Civ. P. 12(b)(2)

"Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1992). In other words, once a defendant raises a lack of personal jurisdiction as a defense, the burden to prove the existence of personal jurisdiction over the defendant shifts to the plaintiff. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). The plaintiff may not rely on the pleadings to satisfy his burden but must establish a basis for personal jurisdiction through sworn affidavits or other competent evidence. N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990). For purposes of a Rule 12(b)(2) motion, the court applies the same standard for truthfulness and inferences as in a Rule 12(b)(6) motion, that is, accepting as true plaintiff's version of the facts and drawing all inferences in the plaintiff's favor. Marten v. Godwin, 499 F.3d 290, 295 n.2 (3d Cir. 2007).

---

[3] Because Hoffman's 12(b)(2) motion to dismiss is granted for the reasons set forth infra, I need not address Hoffman's alternative argument under Fed. R. Civ. P. 12(b)(6).

Under the Federal Rules of Civil Procedure, "a district court may assert personal jurisdiction 'over non-resident defendants to the extent permissible under the law of the state where the district court sits.'" Remick, 238 F.3d at 255 (quoting Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998)). Under Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322(b), Pennsylvania courts may "exercise personal jurisdiction over non-resident defendants to the constitutional limits of the due process clause of the fourteenth amendment." Remick, 238 F.3d at 255 (quoting Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)).

There are two types of personal jurisdiction a court may assert over a defendant – general jurisdiction or specific jurisdiction. Mellon Bank (East) PSFS, 960 F.2d at 1221. If general jurisdiction exists, a court may exercise jurisdiction over a non-resident defendant as to any claim against [him], regardless of whether the subject matter of the cause of action has any connection to the forum." Id. General jurisdiction normally is invoked only when a defendant has maintained "systematic and continuous" contacts with the forum state. Marten, 499 F.3d at 296 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.8 (1984)); Remick, 238 F.3d at 255. Conversely, specific jurisdiction "is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." Remick, 238 F.3d at 255 (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996)); see also Marten, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.").

### 2. Donaldson's Defamation Claim Against Hoffman (Count VI)

Hoffman argues that Donaldson's defamation claim against him must be dismissed under Rule 12(b)(2) because this court lacks both specific and general jurisdiction over him. For the reasons set forth below, I agree that there is no personal jurisdiction over Hoffman in this forum

with respect to the defamation claim.

### a. Specific Jurisdiction

Traditionally, determining whether specific jurisdiction exists over a non-resident defendant involves a three-part inquiry. Marten, 499 F.3d at 296. First, the defendant must have "'purposefully directed' his activities" at the forum. Id. Second, the claim must "arise out of or relate to" at least one of those specific activities. Id. Third, "courts may consider additional factors to ensure that the assertion of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

Here, Donaldson does not argue that Hoffman's contacts with Pennsylvania satisfy this traditional three-step analysis. Instead, the parties rely on the "effects test" set forth by the United States Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), to analyze the existence of specific jurisdiction over non-resident defendants in intentional tort cases. Pls.' Opp. Br. (Docket No. 42) at 2-3. Under Calder, a plaintiff may demonstrate personal jurisdiction over a non-resident defendant if he shows:

(1) The defendant committed an intentional tort;

(2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;

(3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten, 499 F.3d at 297. If a plaintiff satisfies these three elements, he "can demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone . . . are far too small to comport with the requirements of due process' under [the] traditional analysis." Id. (quoting IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998)). The effects test, however, "prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." Id. Thus, "[o]nly if the 'expressly aimed' element of the effects test is met

need [courts] consider the other two elements." Id.

Here, Hoffman argues that Donaldson cannot establish this third element of the effects test, *i.e.*, that Hoffman "expressly aimed" his tortious conduct at Pennsylvania. To demonstrate the "expressly aimed" element of the effects test, a plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 297-98. If the plaintiff "fails to show that the defendant 'manifest[ed] behavior intentionally targeted at and focused on' the forum, [he] fails to establish jurisdiction under the effects test." Id. at 298 (quoting IMO Indus., 155 F.3d at 265). A plaintiff's residence "is relevant to the 'jurisdictional inquiry' insofar as 'residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum.'" Id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984)). The state of a plaintiff's residence, however, "does not on its own create jurisdiction over nonresident defendants. Jurisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" Id.

Applying the above principles to Donaldson's defamation claim against Hoffman, I agree that Donaldson has not met his burden of establishing that Hoffman expressly aimed his alleged defamatory conduct at Pennsylvania. Accordingly, Donaldson has failed to establish specific jurisdiction under the effects test. Even if I assume the truth of Donaldson's allegations and that he felt the brunt of the harm in Pennsylvania, Donaldson has failed to allege any specific facts showing that Hoffman deliberately targeted Pennsylvania. Indeed, nothing in the record indicates that Hoffman sent the alleged defamatory e-mail to anyone in Pennsylvania other than inadvertently to Donaldson. Instead, the intended recipients of the e-mail were Abassi in Redwood City, California and Brad Crosby, Informatica's Senior Vice President of the Americas located in Alpharetta, Georgia. See Hoffman Decl. ¶ 10. In two similar defamation cases, the Court of

Appeals for the Third Circuit has held that such evidence does not satisfy the "expressly aimed" prong. See Marten, 499 F.3d at 298 (finding that "expressly aimed" element was not met where no indication that defendants directed defamatory statements to anyone in Pennsylvania other than plaintiff; and stating that "where defendants aimed their defamatory statements is jurisdictionally significant"); Remick, 238 F.3d at 258-59 (no specific jurisdiction even though defendants faxed plaintiff defamatory letters in Pennsylvania that allegedly were read by plaintiff's Pennsylvania co-workers); see also Team First Consulting, LLC v. Hangliter, Civ. No. 07-311, 2007 WL 1302440, at **7-8 (D.N.J. Apr. 27, 2007). Like in these cases, the single e-mail correspondence at issue here simply does not demonstrate that Hoffman expressly aimed his conduct at Pennsylvania.

Donaldson's arguments in opposition are unpersuasive. First, Donaldson argues that Hoffman must have expressly aimed his conduct at Pennsylvania because "as a resident of Pennsylvania, Plaintiff is threatened with the possibility [of] significantly diminished employment opportunities in the state where he established his office and pursues his profession." Pl. Br. Opp. (Docket No. 42) at 4. This argument, however, confuses the "expressly aimed" prong with prong two of the Calder effects test – that the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered. Donaldson also fails to recognize the distinction between aiming an activity at an individual who happens to reside in Pennsylvania and expressly aiming activity at Pennsylvania, as Calder requires. As set forth above, specific jurisdiction does not exist merely because a defendant intentionally caused harm that was felt in the forum state. Rather, the defendant must also expressly aim his conduct at that state.

Second, Donaldson argues that this case differs from Remick and Marten because "Defendant and Plaintiff were acting under the umbrella of the existing contract between Informatica and Plaintiff." Pl. Opp. Br. at 5. Without elaboration, Donaldson contends that this ongoing legal obligation "creates an intimate link between the Defendant's conduct and its obvious ramifications in Pennsylvania." Id. In addition to the fact that Donaldson does not cite any authority

to support his argument in the defamation context, the argument is misplaced because, as Informatica notes, the only contract at issue in this case, the Compensation Plan, is between Informatica and Donaldson, not Hoffman and Donaldson.

Finally, Donaldson argues that he has met the "expressly aimed" prong because Pennsylvania has "a 'unique relationship' with the Plaintiff's professional community." Id. at 5-6. This argument is without merit. In Calder, the Supreme Court held that personal jurisdiction was proper in California over individual out-of-state defendants who allegedly wrote a defamatory magazine article about plaintiff, an actress and California resident. In particular, the Court held that defendants knew that the plaintiff would suffer harm in California because the heart of the television industry is located in California, the story focused on California, and the magazine in which plaintiffs published the article, the *National Enquirer*, had its largest circulation in California. Calder, 465 U.S. at 788-89; see also Remick, 238 F.3d at 259 (distinguishing Calder); IMO Indus., 155 F.3d at 264 n.7 (same); William Rosenstein & Sons Co. v. BBI Produce, Inc., 123 F. Supp. 2d 268, 273-74 (M.D. Pa. 2000). Here, however, Donaldson does not assert that Pennsylvania is the heart of the software industry of which he is a part or that the industry enjoys any other unique relationship with Pennsylvania. Simply because, as Donaldson alleges, Informatica solicits and transacts some of its business in Pennsylvania and that Donaldson and other participants in the software industry reside or do business in Pennsylvania, does not make the relationship between Pennsylvania and Donaldson's professional community "unique." To the contrary, this case is more analogous to Remick, in which the Court of Appeals for the Third Circuit upheld a dismissal for lack of personal jurisdiction even though the plaintiff, a Pennsylvania attorney who represented professional boxers, alleged that defendant published defamatory statements throughout the professional boxing community, where such persons were located across the country and no unique relationship otherwise existed between the boxing community and Pennsylvania. See Remick, 238 F.3d at 259; see also Marten, 499 F.3d at 298.

15

### b. General Jurisdiction

Donaldson alternatively argues that this court has general jurisdiction over Hoffman. To establish that a defendant is subject to general jurisdiction, a plaintiff must proffer facts that show that the defendant maintained "systematic and continuous" contacts with the forum state. See Marten, 499 F.3d at 296. This threshold is much higher to meet than that for specific jurisdiction because the plaintiff must show that the defendant's contacts with the forum are "extensive and pervasive." Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982); see also Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) ("This court has held that the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction."). If a defendant is subject to general jurisdiction, he can be called to answer any claim against him in that forum, regardless of whether the subject matter of the cause of action has any connection to the forum. See Mellon Bank, 960 F.2d at 1221.

In this case, Donaldson does not assert that Hoffman had any contacts with Pennsylvania outside of his corporate capacity as an Informatica officer and shareholder. Indeed, the only specific contact between Hoffman and Pennsylvania set forth in the Amended Complaint is the alleged defamatory e-mail that Hoffman inadvertently sent to Donaldson in Pennsylvania. In addition, in the Affidavit attached to his opposition brief, Donaldson alleges the following contacts of Hoffman with Pennsylvania: Hoffman approves deals involving a 61-70% discount to customers and/or changes to Informatica's standard service obligations, and some of those deals are with Pennsylvania clients; he directly interacts at times with three Informatica employees located in Pennsylvania, including Donaldson; he is a high-ranking Informatica officer; he is a major equity holder of Informatica stock and therefore receives a direct benefit from every Pennsylvania sale in the form of dividends and increased stock value; he supervises managers who, in turn, have oversight over Pennsylvania employees; and he receives commissions from Pennsylvania sales.

Opp. Br. at 9-11; Donaldson Aff. ¶¶ 5-13.[4]  He also notes that Informatica has at least one office, at least one strategic partner, and more than 103 customers in Pennsylvania.  Opp. Br. at 9-10.  Donaldson argues that these "facts patently establish the continuous and systematic contacts necessary for general jurisdiction."  Id. at 13.

Donaldson's argument is without merit.  As an initial matter, to the extent Donaldson supports his jurisdictional argument by relying on Informatica's contacts with Pennsylvania (as opposed to Hoffman's own contacts with Pennsylvania in his corporate capacity), such reliance is misplaced.  As the Supreme Court stated in Calder, an employee's contacts with the forum "are not to be judged according to his employer's activities there."  465 U.S. at 790.  Rather, "[e]ach defendant's contacts with the forum State must be assessed individually."  Id.; see also Keeton, 465 U.S. at 781 n.13 ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him."); Genesis Int'l Holdings v. Northrop Grumman Corp., 238 F. App'x 799, 803 (3d Cir. 2007) (same).

With respect to Hoffman's own alleged contacts with Pennsylvania, I find that those contacts are not sufficiently "systematic and continuous" to justify the exercise of general jurisdiction.  It is undisputed that Hoffman is a California resident and maintains a business address in Redwood City, California.  Am. Compl. ¶ 7.  Hoffman further declares that none of Informatica's eight Pennsylvania employees reports directly to him, he has not visited Pennsylvania on Informatica business, he has not met with Informatica customers or employees in Pennsylvania, and he has not visited Pennsylvania for any material business purpose on behalf of Informatica.  Hoffman Decl. (Docket No. 39, Ex. A).  Even if I properly may consider Hoffman's Pennsylvania contacts in his corporate capacity in assessing whether general jurisdiction exists, those contacts,

---

[4] Although not mentioned in his affidavit, Donaldson also presumes in his opposition brief that Hoffman relies on the protection of Pennsylvania laws and courts for resolution of potential legal issues involving Informatica's Pennsylvania sales force, customers, and/or shareholders.  Opp. Br. at 11.

as alleged by Donaldson, are not sufficiently extensive or pervasive to meet the stringent standard for general jurisdiction.[5]

### III. CONCLUSION

For the foregoing reasons, Plaintiff has adequately stated a defamation claim against Informatica upon which relief may be granted, and Informatica's motion to dismiss that claim (Count V of the Amended Complaint) pursuant to Rule 12(b)(6) is denied. Informatica's motion to dismiss Count X of the Amended Complaint (WPCL claim related to Plaintiff Capuano) is denied as moot because Plaintiff already has voluntarily withdrawn that claim. Defendant Hoffman's motion to dismiss Count VI of the Amended Complaint (defamation) is granted pursuant to Rule 12(b)(2) for lack of personal jurisdiction. An appropriate Order follows.

---

[5] The parties disagree as to whether it is proper to consider an individual's contacts with the forum in his corporate (as opposed to individual) capacity in the general jurisdiction analysis. Hoffman argues that contacts within an employee's corporate capacity are irrelevant to the jurisdictional analysis. See, e.g., Hoffman Br. Supp. at 10 n.1 (citing Perry v. Markman Cap. Mgmt., Inc., No. 02-744, 2002 WL 31248038, at *4 (E.D. Pa. Oct. 4, 2002)). Donaldson disagrees, arguing that personal jurisdiction may be based upon an individual's corporate contacts under some circumstances. See Pl.'s Br. Opp. at 7-9. I need not address this issue, however, because, as set forth above, even taking Hoffman's alleged corporate contacts with Pennsylvania into account, those contacts are insufficient to establish general jurisdiction over him in this forum.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Lee A. Donaldson, | ) | |
| John Capuano, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 08-605 |
| vs. | ) | |
| | ) | |
| Informatica Corporation and | ) | |
| Paul J. Hoffman, | ) | |
| | ) | |
| Defendants. | ) | |

AMBROSE, Chief District Judge

## ORDER OF COURT

AND NOW, this 25th day of February, 2009, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant Informatica Corporation's Motion to Dismiss (Docket No. 37) is denied in part and denied as moot in part as follows. Informatica Corporation's motion to dismiss Count V of Plaintiffs' Amended Complaint is denied. Informatica Corporation's motion to dismiss Count X of Plaintiffs' Amended Complaint is denied as moot. It is further ordered that Defendant Paul J. Hoffman's Motion to Dismiss Count VI of Plaintiffs' Amended Complaint (Docket No. 39) is granted, and Count VI of the Amended Complaint by Plaintiff Lee A. Donaldson against Paul J. Hoffman is dismissed for lack of personal jurisdiction.

The Status Conference set for March 20, 2009 at 9:15 a.m. shall take place as scheduled.

BY THE COURT:
/s/ Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge